Argued October 4; reversed October 17; rehearing denied
December 5, 1939

# BIRKENBEUEL *v.* BIRKENBEUEL.

(94 P. (2d) 716)

Department 1.

*Moe Tonkon,* of Portland (W. A. Illidge, of Portland, on the brief), for appellant.

*Dorothy McCullough Lee,* of Portland, for respondent.

KELLY, J. On June 15, 1911, at Portland, Oregon, plaintiff and defendant intermarried. They lived together for about twenty-four years, then defendant made it known that he wanted a divorce. At about that time, a young woman entered the office of plaintiff and defendant as a clerical and stenographic assistant.

The defendant took this young lady out to lunch several times and brought her from her home to the office in his automobile. When defendant told plaintiff that he, defendant, loved this young woman, it was agreed that plaintiff would leave their home in Portland and that defendant would secure a divorce. In furtherance of the plan that plaintiff should leave home and go to California, an automobile was purchased for plaintiff from the joint funds of plaintiff and defendant.

Plaintiff changed her mind and then defendant left home. Thereafter, defendant secured the services of an attorney to obtain a divorce, the same to be procured by plaintiff on the ground of desertion. Defendant took plaintiff to the office of this attorney and a divorce complaint was prepared and filed wherein plaintiff charged defendant with desertion and asked for a divorce. That was the manner in which the instant case was instituted. Defendant answered denying the desertion and asking for a divorce from plaintiff.

Plaintiff again changed her mind, and also changed her attorney. This latter attorney prepared an amended complaint omitting the prayer for divorce and asking for money for plaintiff's separate maintenance and for the support of the adopted son of the parties.

To this amended complaint, defendant filed an answer wherein he put in issue the material allegations

of said amended complaint and asked for a decree of divorce.

The ground for divorce alleged in defendant's answer is cruel and inhuman treatment and personal indignities rendering defendant's life burdensome.

Six specifications are set forth:

(1) That plaintiff claimed freedom or exemption from sustaining the marital relation with defendant, renounced her previously expressed desire to have children and rear a family and at no time maintained a normal sex life with defendant.

(2) That ever since said marriage, defendant has been obliged to tolerate plaintiff's mother in his home.

(3) That the attempted adoption of two children, other than the adopted son above mentioned, was not consummated by reason of plaintiff's failure to live in their home and care for said children and on account of the contentious personality of plaintiff's mother.

(4) That the son, who was adopted, has been spoiled and his life wrecked by reason of the unfortunate and unhappy atmosphere in said home.

(5) That after living for many years under this unhappy atmosphere and under treatment advocated by plaintiff, defendant's health broke down completely. Upon obtaining proper medical treatment, defendant's health was restored. That plaintiff, recognizing that defendant would have to leave in order to retain his health, admitted her failure as a wife and proposed that she give the defendant his freedom in order that he might marry a younger woman and still have and rear children of his own. That defendant agreed to this plan, purchased plaintiff a Graham sedan, in which she was to leave for California, and which she acquired in her own name. That when the time for the separation

arrived, plaintiff informed defendant that inasmuch as he was the one who wanted the separation, he should be the one to leave. That defendant did leave his home September 1st, 1935, and has since continued to live separate and apart from plaintiff; but during all this time defendant has supported plaintiff to the best of his ability and reasonably according to his circumstances. That the property owned by defendant is less in value than the amount against it; and this defendant is insolvent without taking into consideration an outstanding indebtedness of $1,539.71 against his office. That the only liquid asset defendant possesses is his income from his patent practice, and that income will steadily decrease for an indefinite time to come.

(6) Extreme jealousy on plaintiff's part causing defendant extreme mental suffering.

■ As we read the testimony, defendant failed to sustain his allegations of cruelty on plaintiff's part or any of them.

As to the first specification, plaintiff testified that the course taken by the parties was at the request of defendant. There can be no question that defendant acquiesced in it. We are impressed with the fact that the advent of the young lady in question was contemporaneous with an awakening on defendant's part that for about twenty-four years his marital practices were so abnormal as to constitute cruelty on his wife's part.

The presence of plaintiff's mother in the home of the parties was invited by defendant. Her furniture was used to equip the first abiding place of plaintiff and defendant after their marriage. Besides, the adopted son testified that she was a very pleasant person.

The third specification reflects as much upon defendant, himself, as upon his wife, especially in the

light of the testimony of the adopted son, who lived with plaintiff and defendant for about nineteen years, to the effect that plaintiff and defendant would leave home at 10 a. m. Sundays and not return until 10 p. m. locking the son out of the house and providing nothing for him to eat while they were gone. This testimony was corroborated by the son's chum to whose home the son would repair for dinner. Such disregard on defendant's part of his adopted son's welfare forecloses his right to claim that he, defendant, was cruelly treated by being refused the opportunity of having the care and custody of other children.

The fourth specification is unproved. It is true that the boy contradicted the testimony of his father; but no disinterested witness challenged the merit and attainment of the boy.

The medical testimony in support of the first phase of the fifth specification was to the effect that defendant suffered from shortness of breath; that he responded to chiropractic treatment and that his malady was in no wise caused by the alleged abnormal sex practices of which defendant complained.

The testimony pertaining to the second phase of specification, number five, clearly reflects a collusive attempt on defendant's part to secure a divorce.

On the sixth specification, the testimony is conflicting; but it is admitted that defendant told plaintiff that he, defendant, loved the young lady in question. It also appears that defendant lunched with the young woman frequently; that he frequently took her in his automobile to and from the office and her home; and, that in company with others, including plaintiff, the defendant was at the beach with the young lady.

The nineteen-year old adopted son of plaintiff and defendant, whom they adopted at his birth, testified that upon a trip to the Mt. Hood Government Camp, his foster father, defendant, showed many courtesies to the young lady in question and practically ignored plaintiff. This was corroborated by a chum of the adopted son. In fact, the record convinces us that no self-respecting wife would fail to resent defendant's misconduct in respect to his apparent attitude toward the young woman mentioned. We are unable to find any allegations or testimony by plaintiff, or in her behalf, charging or imputing an unwarranted or unjustified reflection upon defendant in that regard.

For these reasons, we are unable to concur in the conclusion of the learned trial judge, that defendant is entitled to a decree of divorce.

■ According to defendant's income tax statements, his annual net income from 1927 to 1937, both inclusive, was as follows: 1927, $5,553.07; 1928, $7,541.01; 1929, $6,785.30; 1930, $5,796.07; 1931, $5,756.57; 1932, $3,712.39; 1933, $3,958.11; 1934, $3,506.70; 1935, $6,867.35; 1936, $4,779.73; 1937, $2,264.11.

Plaintiff's living expenses normally approximate $100 per month. By renting part of their property, plaintiff has received approximately $22 per month in addition to the payments made to her by defendant.

We do not overlook the fact that defendant concedes that all of the property of the parties is held by them as tenants by the entirety; but, for sixteen years, plaintiff worked in the office side by side with defendant in building up his business; and prior to that period of sixteen years plaintiff's savings, earned by her before their marriage, were used in two other business ventures.

On November 4, 1935, defendant offered to pay plaintiff $50 per month for her support, and since then has made payment of nearly all of the matured installments thereof; but it is obvious that such sum is insufficient.

We think that defendant should pay plaintiff for her support and maintenance the sum of $60 per month beginning at the date of the first month for which defendant has made no payment.

On the date named, to wit, November 4, 1935, in addition to offering to pay plaintiff $50 per month, as stated, defendant offered to defray the taxes on the house, interest and installments, and to pay the amount required for the adopted son's clothing and books. We hold that $10 per month is a reasonable sum for defendant to pay toward defraying the expense incurred for said son's clothing and instruction.

■ We hold also that defendant should pay plaintiff's costs and disbursements herein including the attorney's fee for $250, heretofore allowed by the circuit court, and an additional sum of $100 attorney's fee for services in prosecuting this appeal.

The decree of the circuit court is reversed and it is ordered that a decree conformable herewith be entered.

RAND, C. J., and BEAN and BELT, JJ., concur.